

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 14, 2018

**BY ECF**

Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:    United States v. Peter B. Johnson, 17 Cr. 482 (JSR)

Dear Judge Rakoff:

        The Government writes to respond to issues raised in defendant Peter B. Johnson's (the "Defendant" or "Peter B.") Sentencing Reply Memorandum, submitted on September 13, 2018 (Dkt. No. 91 ("Def. Reply")); to provide the Court with the full text of the email communications referenced in the Defendant's June 13, 2018 Presentence Investigation Report ("PSR"); and to provide the Court with a small number of additional email communications that pertain to some of the assertions made in the defendant's reply:

        The PSR references a number of email communications involving Peter B. and Transmar employees. Those emails are attached to this letter as follows:

| Date of Email | PSR Reference | Attached as Exhibit |
|---|---|---|
| February 19, 2015 | ¶ 16 | A |
| June 15, 2016 | ¶¶ 16, 20 | B |
| December 27, 2014 | ¶ 17 | C |
| July 2, 2016 | ¶ 18 | D |
| August 3, 2015 | ¶ 18 | E |
| March 1, 2015 | ¶ 19 | F[1] |
| August 24, 2016 | ¶ 19 | G |
| October 24, 2016 | ¶ 20 | H |
| March 2, 2016 | ¶ 20 | I |

---

[1] These two emails attach excel spreadsheets of versions of BB's. We have provided the "cover tab" of those reports, but have not attached the full spreadsheets.

| August 16, 2015 | ¶ 20 | J |
|---|---|---|
| September 14, 2015 | ¶ 21 | K |
| March 1, 2015 | ¶ 21 | L |

The Defendant argues that the Government "erroneously claims" that Thomas Reich reported to both Peter G. Johnson ("Peter G.") and Peter B and disputes that Peter B. had an "active role" in the management of Transmar. Def. Reply at 1-2. While the Defendant correctly notes that, as stated in the PSR, Reich formally reported to Peter G., Transmar's CEO, it is clear from communications between Peter B. and Reich that, at least during the period of the charged conspiracy, Peter B. exercised supervisory authority over Reich and Gary O'Connor with respect to the preparation of the BB's, that they kept abreast of the fraudulent revisions that were being made to the BB's and sought Peter B.'s approval for them, and the Defendant provided instruction to Reich and Gary O'Connor regarding how entries should be falsified. *See* Ex. A (Peter B. directing O'Connor to look for ineligible inventory for inclusion in the BB's); Ex. B (Peter B. directing Reich to falsely date invoices so that the underlying transactions could be inappropriately included in the BB's); Nov. 5, 2015 email chain (attached as Exhibit M) (Peter B. approving the use of "old purchase contract numbers" in the BB); Mar. 31, 2016 email chain (attached as Exhibit N) (Peter B. directing O'Connor and Reich to come to his office to discuss the BB).

Moreover, it is evident that, although Peter B. was officially affiliated with Euromar, he was significantly involved in those operations of Transmar that were necessary to the conspiracy to submit fraudulent BB's: the financial and accounting functions that prepared and submitted documentation to the lending banks and the transactional components that effectuated some of the transactions that were designed to inflate Transmar's collateral. *See, e.g.,* Ex. K (Peter B. scheduling meeting with Reich and Nancy Pizzi to discuss "potential adjustments" to Transmar's "financials and compliance figures"); Nov. 26, 2015 email chain (attached as Exhibit O) (Peter B. approving sales to intermediaries).

Similarly, the Defendant objects that "it is not clear" how he "could have been" "instrumental in overseeing and directing the preparation of Transmar's Borrowing Base reports" because it was Reich and O'Connor who prepared and submitted the BB's, and because fraudulent entries were included in the BB's prior to the Defendant's discovery of the fraudulent scheme. Def. Reply at 2. He further claims that he could not possibly have "masterminded a fraud he did not start." *Id.* at 4. While the Government does not allege that Peter B. was the originator of the fraudulent scheme, by 2014 and through the end of 2016 when Transmar filed for bankruptcy (*i.e.,* the time period of the charged conspiracy), he had become the creative leader of the scheme, developing new, less readily detectable methods of padding the BB's with ineligible collateral. It is clear from his email communications that, by 2014, Peter B. was directing and overseeing the inclusion of fraudulent entries in the BB's and that his efforts to remove entirely fictitious entries from the BB were designed to keep the banks and their auditors from discovering the fraud. *See, e.g.,* Ex A; Ex. B; Ex C (Peter B. soliciting a counterparty for a circle transaction); Ex. G (Peter B. directing O'Connor to highlight "questionable inventory" in a BB "for [his] eyes only"); Defendant's Sentencing Submission, dated Sept. 10, 2018 (Dkt. No. 90), Ex. 84 (Peter B. proposing spreading intermediary transactions over "several different looking contracts and chang[ing] around pricing" in order to avoid scrutiny by the auditor for the

lender banks); *id.* Ex. 85 (Peter B. proposing the inclusion of ineligible collateral and circle transactions so as not to "get[] caught" with "fictitious inventory"); *id.* Ex. 86 ("Back dating stuff is far better than [the auditor] discovering fake stuff").

     In sum, the assertions set forth in the defendant's reply do not fit with the record in this case, and do not undermine the Government's recommendations set forth in its sentencing memorandum.

                        Respectfully submitted,

                        GEOFFREY S. BERMAN
                        United States Attorney

By:          /s/
              Benet J. Kearney
              Daniel M. Tracer
              Assistant United States Attorneys
              (212) 637-2260/2329